IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATEF AMMARY and | : | |
| DONNA AMMARY, h/w | | |
|     Plaintiffs, | | |
| | : | CIVIL NO. 09-0963 |
|     v. | | |
| WILLIAM EDWARDS, INC. and | : | |
| KEITH COLEMAN | | |
|     Defendants. | | |

**MEMORANDUM**

**Jones, J.**                                                                                                                                                                    **July 30, 2010**

**I.     Introduction**

The above-captioned matter involves personal injury claims resulting from a motor vehicle accident that occurred on May 8, 2007. Plaintiff Atef Ammary was operating a school bus on Route 78 in Hamburg, Pennsylvania, when a tractor trailer being driven by Defendant Keith Coleman collided into the rear of the bus. The tractor trailer was owned by Defendant William Edwards, Inc. and it is alleged that Mr. Coleman was an employee, servant, workman, agent or authorized user of the truck, therefore Defendants were individually, directly, jointly, severally and vicariously negligent for the various injuries Mr. Ammary sustained. Plaintiff Atef Ammary's wife, Donna Ammary, is claiming loss of consortium, as well as expenses incurred in paying for her husband's medications, medical care and hospitalization.

Plaintiffs have filed a Motion for Partial Summary Judgment, seeking judgment on the issue of liability only. Defendants have responded and said Motion is currently before this Court

1

for disposition. For the reasons set forth hereinbelow, Plaintiffs' Motion will be granted.

## II. Undisputed Facts

Plaintiffs Atef and Donna Ammary (husband and wife) instituted this action by filing a Complaint in the Eastern District of Pennsylvania on March 5, 2009. Said Complaint alleged that on or about May 8, 2007, Plaintiff Atef Ammary[1] was employed as a truck/bus mechanic for J&J Leasing and also maintained a Commercial Driver's License. (Doc. No. 21, ¶¶1-2.) Soon after clocking in that day, Plaintiff was advised by his employer that he was going to drive a luxury bus to transport a group of middle school children from Allentown to Gettysburg. (Doc. No. 21, ¶ 2.) Plaintiff performed his pre-trip inspection, picked the children up from school, and transported them to Gettysburg without incident. (Doc. No. 21, ¶ 3.) The accident at issue occurred on the trip home from Gettysburg, along Interstate I-78, near the Hamburg exit. (Doc. No. 21, ¶ 3.) This portion of the highway was a four-lane divided highway with two lanes in each direction. (Doc. No. 21, ¶ 4.) Plaintiff had been in the right lane for approximately five minutes prior to the accident but moved to the left lane in response to a sign which indicated that the right lane was being closed due to construction. (Doc. No. 21, ¶ 5.) Approximately a half mile in front of him, Plaintiff observed electric, yellow arrow merge signs in the right lane and traffic slowing in the left lane. (Doc. No. 21, ¶ 6.) As Plaintiff came to a stop, he looked in both rear-view mirrors, at which time he noticed Defendants' tractor trailer approaching at a fast rate of speed. (Doc. No. 21, ¶ 7.) The tractor trailer ultimately struck the rear of the bus. (Doc. No. 21, ¶ 8.)

---

[1] For ease of discussion and unless otherwise noted, this Court's use of the term "Plaintiff" will refer to Plaintiff Atef Ammary only.

State Trooper Alex Douglas arrived at the scene shortly thereafter and reported the details of the collision, including the identity of the parties, vehicle descriptions, and road specifications. (Doc. No. 21, ¶ 9.) Trooper Douglas' deposition testimony, as corroborated by his report, was that Defendant Coleman told the trooper that the bus was in the left lane and he was in the right but that he waited to long to merge, thereby colliding into the rear passenger side of the bus. (Doc. No. 21, ¶ 10.) Trooper Douglas further testified that Defendant Coleman told him that the crash was his fault. (Doc. No. 21, ¶ 10.)

While still at the accident scene, Defendant Coleman notified Defendant William Edwards, Inc.'s (hereinafter "Defendant Edwards") Safety Director, James Belshee, who conducted an internal investigation of the accident. (Doc. No. 21, ¶ 11.) Defendant Coleman told Mr. Belshee that he was traveling eastbound through a construction zone on Route 78 and was unable to stop his tractor trailer, thereby colliding into the rear of Plaintiff's bus. (Doc. No. 21, ¶ 12.) Defendant Coleman was discharged from employment as a result of the accident. (Doc. No. 21, ¶ 13.)

It is undisputed that Defendant Coleman impacted the rear of the bus and that he has no recollection of the following details:

- Where he was heading at the time of the accident;
- What time he was due to arrive there;
- The details of any construction or lane closures at or near the accident site;
- Whether he applied his brakes or not or left any skid marks;
- How long he was in the right lane; or
- Whether he saw brake lights in front of cars in front of him prior to the

impact.

(Doc. No. 21, ¶ 16(a)-(f).)

Defendant Coleman has testified that there was nothing about the road conditions that he felt contributed to the accident and in fact authored a Statement on the day of the accident, acknowledging that the right lane on Route 78 was closing and that while he was looking into his rear-view mirror, he merged left into the rear of the bus. (Doc. No. 21, ¶ 16.) Defendant Coleman's Statement contains no information indicating that the bus driver contributed in any way to the accident. (Doc. No. 21, ¶ 16.)

## III.  Discussion

The standard for assessing a Motion for Summary Judgment is well-settled:

> A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and a factual dispute is "material" when it "might affect the outcome of the suit under the governing law."
>
> In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.

*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)(citations omitted).

In the Motion for Partial Summary Judgment presently before this Court, Plaintiffs contend that inasmuch as Defendant Coleman has already admitted fault and has failed to point to any facts or contributing actions by Plaintiff which led to the accident, they are entitled to judgment as a matter of law on the issue of liability.

Defendants reject this notion, asserting instead that "the mere happening of a rear end collision does not constitute negligence as a matter of law on the part of the operator of the vehicle in the rear." (Doc. No. 22, ¶¶18-22.) Moreover, Defendants argue that during his deposition, Mr. Coleman testified that Plaintiff did in fact contribute to the accident when he "passed me before the construction zone and [he] shot back over in front of traffic." (Doc. No. 22, ¶¶ 18-22, Ex. A, 15:20-24.) As such, Defendants maintain that a genuine issue of material fact exists which precludes judgment on the issue of liability.

Although Defendants are correct that a rear-end collision is not negligence *per se* on the part of the operator of the rear vehicle, in this particular case, Defendant Coleman specifically admitted liability. (Doc. No. 21, Exs. B, F.) Moreover, immediately after the accident, when the details were freshest in his mind, Defendant Coleman did not provide any indication to the police or to Edwards' safety inspector, that Plaintiff was in any way to blame for the accident. (Doc. No. 21, Exs. B, C, F, G.) It wasn't until Mr. Coleman's deposition more than two years after the accident, that Mr. Coleman - for the first time - provided any indication of fault by Plaintiff:

> [Plaintiff] passed me before the construction zone, and they [sic] shot back over in front of, you know, traffic, you know. But he wasn't the only one. There was a lot of cars doing the same thing. I was going a lot slower than these people. They all passed me, you know."

(Coleman Dep. 15:20-24.)

It is this one statement that Defendants contend prevents the entry of judgment on the issue of liability.² However, as noted hereinabove, a party opposing a motion for summary judgment "[c]annot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim." *Sentry,* 486 F. Supp. 2d at 506. Instead, they must "[e]ither present ***affirmative evidence supporting its version of the material facts*** or to refute the moving party's contention that the facts entitle it to judgment as a matter of law." *Knoch v. J.B. Hunt Transp., Inc.*, 2009 U.S. Dist. LEXIS 107723, at *8 (M.D. Pa. Oct. 13, 2009), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)(emphasis added). Defendants have not provided this Court with a scintilla of evidence to support Mr. Coleman's belated assertion that Plaintiff did something which might have contributed to the accident. Viewing his deposition testimony in a light most favorable to Defendants and accepting as true that which Mr. Coleman claims might have contributed to the accident (Plaintiff passing him before the construction zone and merging into the one lane of travel), simply does not permit an inference of contributory negligence. Instead, it merely demonstrates that which has been established by the remaining record: Plaintiff was following the directives of the construction signs and merging into the left lane.

Although a rear-end collision might not constitute negligence as a matter of law on the part of the operator of the rear vehicle, "[t]he law implies that the driver will always be carefully watching so much of the road as included within that assured clear distance ahead and will always keep his vehicle under such control that he can stop it within that distance." *Grochowalski v. Young*, 1994 U.S. Dist. LEXIS 7993, at *6 (E.D. Pa. June 13, 1994)(internal

---

² In fact, Defendants' two-paragraph response to Plaintiffs' allegations of liability via the instant Motion focuses solely on these few lines from Mr. Coleman's deposition testimony and does nothing to rebut <u>any</u> of the overwhelming evidence presented by Plaintiffs.

citations omitted). For purposes of the instant Motion, Defendants have not argued that Mr. Coleman's deposition testimony that "[Plaintiff] passed me before the construction zone" and "[s]hot back over in front of [ ] traffic" constitutes a "sudden emergency" defense.[3] Instead, they summarily claim that this testimony by Mr. Coleman "*creates*" an issue of fact which necessarily precludes summary judgment. (Doc. No. 22, ¶¶ 18-22.) Although certainly not dispositive of the issue at hand, this Court notes Defendants' choice of the word "creates," as opposed to any reference to an issue of fact which already *exists*. Defendants offer absolutely no discussion of - or explanation for - Mr. Coleman's prior statement to police at the time of the accident, wherein he clearly told Trooper Douglas that the accident was his fault. (Doc. No. 21, Exs. B, F.) In fact, Mr. Coleman was issued a Citation for careless driving as a result of the accident. (Doc. No. 21, Ex. B.)[4] Moreover, upon investigation, Defendants' own Safety Director, James Belshee,

---

[3] Said defense provides as follows:

> In Pennsylvania, the sudden slowing or stopping of a vehicle must be anticipated. "The 'sudden emergency' doctrine is available as a defense to a defendant who suddenly and unexpectedly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and respond appropriately. The doctrine is successfully applied as to a defendant where the defendant proves that he did not create the emergency, and where he responded in a reasonable fashion." That which gives rise to the emergency must come about suddenly, without warning, and any action taken to save oneself from the peril must occur spontaneously without time for deliberate reflection. However, the sudden emergency doctrine cannot excuse the defendant where the emergency has been created through his own negligence; he may not shield himself behind a situation resulting from his own fault.

*Grochowalski* at **6-7 (internal citations omitted).

[4] Although the Citation is not dispositive of the issue of Defendant Coleman's negligence, Defendants provide absolutely no evidence to rebut the contents of the Police Report.

concluded that while in the course and scope of his employment, Defendant Coleman "did not use good judgment with respect to the operation of the equipment and as a result of the poor judgment and negligent operation, struck the other vehicle in the rear." (Doc. No. 21, Ex. G, 18:9-12; 21:1-5.) Mr. Belshee further testified "upon review of the circumstances, we considered this to be a negligent operation accident on the part of Mr. Coleman" and that Defendant Coleman's own "actions" in the accident were the reason for his termination from employment. (Doc. No. 21, Ex. G, 15:10-14; 30:6-8.)

In sum, Defendant has presented this Court with no specific facts which demonstrate that there is a genuine issue for trial. In that same vein, there are no justifiable inferences that this Court could make which might potentially relieve Defendants of their liability in this case, as any such inferences are simply unsupported by the record, *in toto.*

## IV. Conclusion

For the reasons set forth hereinabove, Plaintiffs' Motion for Partial Summary Judgment is hereby granted as to the issue of liability.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.